1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA
10

| CLYDE REGINALD ELLIS, an individual,<br><br>                          Plaintiff,<br><br>v.<br><br>OFFICER BRADY; SAN DIEGO SHERIFF'S OFFICE, DOES 1-7,<br><br>                          Defendants. | Case No.:  16cv1419 WQH (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT DERRICK BRADY**<br><br>**[ECF No. 19]** |
| --- | --- |

        Before the Court is Defendant Derrick Brady's ("Defendant") motion for summary judgment.  ECF No. 19.  For the following reasons, the Court **RECOMMENDS** that the district judge **GRANT** Defendant's motion for summary judgment.

## I.    **PROCEDURAL BACKGROUND**

        Plaintiff Clyde Reginald Ellis, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action alleging various claims stemming from an altercation with Defendant on June 7, 2015.  His first three claims for relief (Claim 1: excessive force, Claim 2: failure to train, and Claim 3: failure to supervise) all are alleged violations of 42 U.S.C. § 1983.  ECF No. 1.  His remaining claims for intentional infliction of emotional distress, battery, negligence, and violation of California Civil Code §§ 43 and 52.1 arise

under California state law.  Id.  By order dated September 9, 2016, the district judge dismissed the San Diego Sheriff's Office based on Plaintiff's failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).  ECF No. 3.

After the close of discovery, Defendant filed this motion for summary judgment seeking judgment in his favor on all claims.  Defendant, and the Court, notified Plaintiff of the requirements for opposing summary judgment pursuant to Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) and Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (*en banc*).[1]  The Court granted Plaintiff two extensions of time to file his opposition.  ECF Nos. 24, 28.  Plaintiff ultimately filed a late opposition, which the Court nonetheless accepted for filing in light of other procedural issues in this case.  ECF No. 32.  Specifically, Defendant omitted a key fact from his summary judgment motion, which also was missing from the complaint—whether Plaintiff was a pretrial detainee or convicted prisoner at the time of the incident.  The Court, therefore, ordered the parties to file supplemental briefing, which resolved this question and addressed Plaintiff's claims accordingly.  ECF No. 33.

On November 1, 2017, Defendant filed a supplemental brief.  ECF No. 34.  Plaintiff did not file a supplemental opposition on or after the November 15, 2017 deadline for doing so.  Defendant filed a notice of lack of opposition (ECF No. 35) and the Court took the matter under submission.

## II.  FACTUAL BACKGROUND

### a.  Plaintiff's Complaint

In his complaint, Plaintiff alleges that on or about June 7, 2015, Defendant Brady and other unnamed officers called Plaintiff out of his cell at George Bailey Detention Facility for transport.  ECF No. 1 ¶ 19.  Defendant then, "without provocation, reason, or justification," slammed Plaintiff against a cement wall and then onto the ground, at which

---

[1] Klingele and Rand require the district court to ensure that a *pro se* prisoner has been given "fair notice ... of the requirements and consequences of a summary judgment motion."  Solis v. County of Los Angeles, 514 F.3d 946, 952-53 (9th Cir. 2008).

point the unnamed officers jumped on Plaintiff.  Id. ¶¶ 20-21.  As a result of Defendant's

and the other officers' actions, Plaintiff claims that his thumb suffered a fracture and

swelling and remains disfigured.  Id. ¶¶ 21-22 (and Introduction).

**b. Plaintiff's Deposition**

During discovery in this case, counsel for Defendant attempted to depose

Plaintiff.[2]  After answering a few introductory questions, Plaintiff responded to counsel's

question about Plaintiff's prior arrests by stating "I think that I don't want to answer no

more questions until I got an attorney, some kind of representation for me."  ECF No. 19-

4 at 10:14-16.  Defendant's counsel explained that he nonetheless was going to go

through the questions and that Plaintiff could make the same representation to each

question if he wished.  Id. at 11:15-19.  After a few more questions, Plaintiff said:

> I'm scared.  I don't like detectives.  I don't like people that come
> representing somebody else and not me 'cause I feel like you against me.
> Everything I say is going to be used against me, so why would I tell you? I
> need help right now.  I need - - I need a lawyer to represent me like - - just
> like you here representing Brady, I need somebody here to represent me
> other than myself - -

Id. at 12:21 – 13:3.  From then on, Plaintiff responded to most of the questions by stating

"[u]ntil I have representation, I will not answer."  He refused to answer counsel's

questions about whether he was involved in a fight with another inmate in the dayroom

on June 7, 2015[3], whether he hurt his left thumb in the dayroom fight, or whether

Plaintiff was drinking pruno and/or was drunk on June 7, 2015.  Id. at 15:5 – 16:2, 19:1-

4.  Only when counsel asked "[d]id Officer Brady ever do anything that caused you to

---

[2] A copy of the transcript of this deposition is attached as Exhibit C to the declaration of Defendant's
counsel (filed in conjunction with Defendant's motion for summary judgment).  ECF No. 19-4.
[3] Defendant believes Plaintiff hurt his left thumb in a fight with another prisoner prior to being taken
from his cell by Defendant Brady.  ECF No. 19-4, Ex. A (Defendant's report, wherein Defendant quotes
Plaintiff as having said "[m]y thumb is [expletive] up but it was from a fight earlier, nothing you did").
The Court makes no finding as to the accuracy of this statement, but cites it only as showing
Defendant's view of the facts.

break your left thumb," did Plaintiff agree to respond, answering "[a]bsolutely." Id. at 16:20-22.

### c. **Defendant's Evidence**

In addition to offering the transcript, Defendant also supported his motion with Officer Brady's declaration and report (dated June 9, 2015) and four surveillance videos showing the events of June 7, 2015, from four different video cameras. ECF No. 19-3 ¶¶ 2-3 and Exs. A & B. Defendant Brady states in his declaration that both the report he wrote and submitted to his supervisor and the four videos were kept in the course of the regularly conducted activity of documenting and memorializing events involving prisoners and were made as part of a regular practice. Id. ¶¶ 2-3.

In his report, Defendant states that he heard loud yelling while walking down a corridor. ECF No. 19-4, Ex. A. He discovered Plaintiff and another inmate yelling at each other through the door. Id. To stop the yelling, he decided to escort Plaintiff to the opposite end of the corridor. Id. With another officer, who he identifies as Deputy Vlahakis, covering him, he told Plaintiff to exit the cell and turn left and then "lightly placed [his] hand on [Plaintiff's] shoulder to guide him in the direction [he] wanted him to go." Id. The report states that Plaintiff then told Defendant not to touch him, at which point Defendant smelled alcohol on Plaintiff's breath. Id. Defendant then grabbed Plaintiff's right tricep with his left hand. Id. Plaintiff yanked his arm away from Defendant's grip and balled his right hand into a fist. Id. At this point, Defendant reports that he shoved Plaintiff into the wall to the left and applied pressure to Plaintiff while he and Deputy Vlahakis brought Plaintiff's arms behind his back. Id. Defendant then swept Plaintiff's legs in order to take him to the ground and so that the officers could apply handcuffs and leg chains. Id. Plaintiff was placed on a medical gurney and taken to be evaluated by the UCSD doctor on shift. Id.

///

///

///

The video footage shows Defendant and Deputy Vlahakis[4] approach Plaintiff's cell. ECF No. 19-4, Ex. B. Plaintiff walks out of his cell with his hands in front of him. Id. Defendant appears to put his hand briefly on Plaintiff's back, then down by his side, and then move it to Plaintiff's right tricep. Id. Plaintiff immediately yanks his arm forward and shakes Defendant's hand off. Id. Defendant then pushes Plaintiff to the wall to Plaintiff's left and the two officers restrain Plaintiff briefly before pulling his arms behind his back. Id. At this point, Officer Vlahakis is on Plaintiff's left and pulling Plaintiff's left arm and Defendant is on Plaintiff's right and pulling Plaintiff's right arm behind his back. Id. The videos lack sound, but Plaintiff's facial expression does not appear to change significantly between when the officers begin pulling his arms behind his back and when they take him down to the floor. Id. Once the officers take Plaintiff to the ground, at least eighteen other officers respond and it is difficult to see what happens until two officers arrive with a gurney, at which point Plaintiff is loaded up and taken back down the hall. Id.

### d. **Plaintiff's Declaration**

On October 16, 2017, Plaintiff opposed Defendant's summary judgment motion and attached a declaration signed under penalty of perjury. ECF No. 32. In his declaration, Plaintiff admitted getting into "a physical altercation" with another prisoner on June 7, 2015, but did not mention a thumb injury. Id. at 9[5] ¶ 4. He states that when Defendant opened the cell door, Defendant "started ridiculing [him] for always being the center of attention." Id. at 9-10 ¶ 6. In response, Plaintiff threatened to write up Defendant if he did not stop harassing Plaintiff. Id. at 10 ¶ 7. As he was walking down the hall, Plaintiff states that Defendant applied "tremendous pressure" to his left shoulder, causing Plaintiff to scream out in pain and pull away from Defendant. Id. ¶¶ 9-10.

---

[4] In his opposition, Plaintiff agrees that it was Deputy Vlahakis who assisted Defendant in escorting and taking down Plaintiff. ECF No. 32 at 2.

[5] Because Plaintiff's declaration and other attachments are filed under the same ECF Number, the Court will refer to the ECF page numbers printed on the top of the page.

Defendant then slammed him into the wall and Defendant and Deputy Vlahakis forced his arms behind his back. Id. ¶¶ 11-12. When Plaintiff said they were hurting him, Defendant said "he was going to show me hurt" and then "twisted [Plaintiff's] left thumb until it went limped (sic)." Id. ¶¶ 12-13. Plaintiff states that he then started screaming, at which point Defendant kicked his feet out from under him and the officers handcuffed and shackled him. Id. At some point, a Sergeant North came on the scene, and Plaintiff claims that Defendant falsely told him that Plaintiff was combative and tried to assault the officers. Id. ¶ 15. Plaintiff responded that Defendant had assaulted him. Id. ¶ 16. Plaintiff was then taken via gurney for medical attention and later was diagnosed with a broken thumb that required surgery. Id. ¶¶ 17-19.

### e. Motion to Strike

In light of the fact that Plaintiff refused to answer questions during his deposition, but then added new facts in his declaration, Defendant asks that the Court strike and/or disregard Plaintiff's declaration. ECF No. 34 at 2-4; see also ECF No. 19-1 at 11-12. Defendant contends that Plaintiff invoked the Fifth Amendment during his deposition by stating "[e]verything I say is going to be used against me, so why would I tell you?" ECF No. 34 at 4. Having then refused to answer questions that would allow Defendant to test the veracity of Plaintiff's claims, Defendant argues that Plaintiff should not be allowed to inject new facts via his declaration in order to overcome summary judgment. Id. at 3-4.

The Ninth Circuit has "long held that a district court may strike the testimony of a witness in a criminal proceeding to avoid a witness's improper use of the Fifth Amendment privilege against self-incrimination as a sword as well as a shield." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 640 (9th Cir. 2012). More recently, the court concluded that this rule "is equally applicable in civil proceedings." Id. at 641. In so doing, it agreed with five other circuits, including the Fourth Circuit, wherein the court held that "the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion." Edmond v. Consumer Prot. Div. (In re Edmond),

934 F.2d 1304, 1308 (4th Cir. 1991) (affirming decision to strike affidavit submitted in support of summary judgment motion and deny summary judgment).

In this case, Plaintiff expressed an understanding that Defendant's counsel did not represent him and that everything he said would be used against him. ECF No. 19-4 at 12:21 – 13:3. He then repeatedly refused to answer deposition questions. Under these facts, the Court finds that Plaintiff did invoke his Fifth Amendment privilege against self-incrimination.[6] Initially, he used it as a shield by refusing to answer questions about his prior arrests, whether he fought with another inmate in the dayroom just prior to his altercation with Defendant, whether he hurt his left thumb in that fight, whether he drank pruno or was drunk on June 7, 2015, and whether Defendant did anything to hurt him physically. The problem began when counsel asked him a question that supported *Plaintiff's* version of the facts—"[d]id Officer Brady ever do anything that caused you to break your left thumb"—and Plaintiff agreed to respond, answering "[a]bsolutely." Id. at 16:20-22. At this point, Plaintiff was using the Fifth Amendment unfairly as a sword. He continued to do so in his declaration opposing summary judgment when he alleged for the first time (1) that it was Defendant's application of "tremendous pressure" to his left shoulder that caused Plaintiff to pull away from Defendant, (2) that after Defendant had pushed him to the wall, Defendant said "he was going to show [Plaintiff] hurt," and (3) that Defendant then twisted Plaintiff's thumb until it went limp. These facts contradict Defendant's report and are presented in an effort to defeat summary judgment. But, by offering them after his deposition and after the close of discovery, Plaintiff denied Defendant an opportunity to test the veracity of his claims and "impaired the truth-seeking function of the judicial process." $133,420.00 in U.S. Currency, 672 F.3d and 642. This selective application of the privilege against self-incrimination cannot be

---

[6] Though Plaintiff expressed an unwillingness to answer until he had counsel, the Court does not find that this changes the outcome. Plaintiff does not have a right to counsel in a civil case and he made no subsequent efforts to obtain counsel. Thus, his refusals to answer amounted to an invocation of the Fifth Amendment privilege.

allowed. See Garvin v. Tran, No. C07-01571 HRL, 2011 WL 1044370, at *2 (N.D. Cal. Mar. 22, 2011) (finding it appropriate to strike declaration/opposition because party "should not be able to assert the Fifth Amendment when asked about these topics in his deposition and then submit an opposition briefing containing statements about those same topics in order to oppose summary judgment"). The Court, therefore, **RECOMMENDS** that the district judge **STRIKE** Plaintiff's declaration.

While the Court still is bound to view the facts in the light most favorable to Plaintiff, it will do so without consideration of Plaintiff's declaration. This entails relying on the factual allegations in his complaint as well as the video recordings offered by Defendant. Where "[t]here are no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," the Court may "view[] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 378-81 (2007)[7]. Here, though Plaintiff generally refused to answer questions during his deposition, he did volunteer that the incident was recorded on video. ECF No. 19-4 at 17. He also does not challenge the authenticity or accuracy of the recordings. As such, the Court will rely on the videos to fill in gaps in Plaintiff's pleadings.

_____

[7] The Scott case involved a car chase, which resulted in an officer bumping the respondent, who lost control, crashed, and was injured. Id. at 375. In reviewing the district court's denial of the officer's summary motion, the Court of Appeals adopted the respondent's version of the facts, which gave the impression that during the chase "there was little, if any, actual threat to pedestrians or other motorists, as the roads were mostly empty and [respondent] remained in control of his vehicle." Id. at 378. The Supreme Court, on the other hand, considered the video recording, which showed the respondent "racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast," swerving around over a dozen cars and forcing "cars traveling in both directions to their respective shoulders to avoid being hit," and running multiple red lights with numerous police cars in pursuit. Id. at 379. As the Court noted, "[f]ar from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." Id. at 380. For this reason, the Court concluded that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

### III. **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex. Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party can establish an absence of a genuine issue of material fact by (1) presenting evidence that negates an essential element of the non-moving party's case; or (2) demonstrating that the nonmoving party failed to establish an essential element of that party's case. Celotex, 477 U.S. at 322-323. The moving party must identify the pleadings, depositions, affidavits or other evidence that the party "believes demonstrates the absence of a genuine issue of material fact." Id. at 323. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

If the moving party meets its burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. V. Cities Serv. Co., 391 US. 253, 289 (1968)). In making this determination, the court must view the underlying facts in the light most favorable to the party opposing the motion. Id. The court should not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

## IV.  **DISCUSSION**

### a.  **Claim 1: Excessive Force**

In his first claim under 42 U.S.C. § 1983, Plaintiff alleges that Defendant used excessive force in violation of the Fourth Amendment.  ECF No. 1 ¶¶ 23-35.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-394 (1989) (citation omitted).  To prevail on a section 1983 claim, a claimant must prove that: (1) a person acting under color of state law committed the conduct at issue; and (2) the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988); Naffe v. Frey, 789 F.3d 1030, 1035-36 (9th Cir. 2015).  Defendant does not dispute that he was acting under color of state law.  Rather, he argues that there are no triable issues of fact as to whether he violated any of Plaintiff's rights protected by the Constitution.

Just which right Plaintiff is asserting is the first issue.  Plaintiff alleges that Defendant used excessive force in violation of the Fourth Amendment, however the Fourth Amendment applies to claims that excessive force was used in the course of an investigatory stop, an arrest, or any other "seizure" of the individual.  Graham, 490 U.S. at 388.  Plaintiff already was in custody at the time of the incident, so the Fourth Amendment would not apply.  The parties now agree that Plaintiff was a convicted prisoner at the time of the incident (see ECF No. 34 at 1; ECF No. 34-1 Exs. A, B[8]; ECF

---

[8] Defendant requests that the Court take judicial notice of a Felony Abstract of Judgment filed June 28, 2013, and Felony Minutes – Pronouncement of Judgment dated June 28, 2013, which show that Plaintiff was sentenced to a 5 year prison term plus a 6 year enhancement in the Superior Court of California, County of San Diego.  The Court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  This includes proceedings and records from other courts in other cases that directly relate to the case at hand.  Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007).  Because the existence of, and sentence set forth in, these documents are not subject to reasonable dispute and may readily be confirmed, the Court will take judicial notice of these documents.

No. 32 at 6 (Plaintiff's acknowledgment that, prior to the incident with Defendant, he had been sentenced by a court to serve time in state prison and was a ward of the state)), so his claim would be considered under the Eighth Amendment's cruel and unusual punishment standard. See Hudson v. McMill, 503 U.S. 1, 6-7 (1992).

The question is whether the Court can address Plaintiff's claim if it challenges the use of excessive force under the wrong constitutional amendment. Precedent suggests that it can. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule further specifies that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Within the context of motions to dismiss, it is firmly established that a complaint need contain only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This suggests that it is the factual allegations, not the legal labels attached, which determine the issue. The Tenth Circuit has stated expressly that "[a] *pro se* litigant's mere citation of the wrong constitutional amendment does not preclude his cause of action so long as the facts he alleges state a claim under an obviously applicable constitutional provision." Slayton v. Willingham, 726 F.2d 631, 634 (10th Cir. 1984). In the Ninth Circuit, it has long been established that "'where the petitioner is *pro se,* particularly in civil rights cases, [courts should] construe the pleadings liberally and ... afford the petitioner the benefit of any doubt.'" Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)).

Here, Plaintiff clearly stated that his claim is for excessive force and has pled facts supporting his claim. Specifically, Plaintiff alleges that, on June 7, 2017, Officer Brady and another officer called Plaintiff out of his cell for transport and then "[w]ithout provocation, reason, or justification, Officer Brady slammed [Plaintiff] up against a

cement wall and then onto the ground." ECF No. 1 ¶¶ 19-20. He claims that other officers then jumped on him, further injuring him. Id. ¶ 21. As a result of all of these actions, Plaintiff submits that his thumb suffered a fracture and swelling and remains disfigured. Id. ¶¶ 21-22. In light of these facts, the Court is not left in doubt as to the crux of Plaintiff's claim. The Court, therefore, will analyze Plaintiff's claim as one of excessive force under the Eighth Amendment.

### i. **Qualified Immunity**

Defendant argues that he is entitled to qualified immunity with regard to Plaintiff's claim that Defendant used excessive force in violation of the Eighth Amendment. ECF No. 19-1 at 13; ECF No. 34 at 7. Qualified immunity acts as "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 237 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). It protects government officials from liability when their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been cognizant. Hope v. Pelzer, 536 U.S. 730, 739 (2002). The qualified immunity inquiry proceeds in two parts: (1) "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (internal citations omitted). Courts have discretion to decide which part to address first. Id. at 236. Further, on summary judgment, the facts must be viewed in the light most favorable to the opposing party. White v. Pauly, __ U.S. __, 137 S. Ct. 548, 550 (2017) (per curium).

### 1. **Did Defendant's Conduct Violate the Eighth Amendment?**

The Eighth Amendment's cruel and unusual punishment standard governs claims brought by convicted prisoners. See Hudson, 503 U.S. at 6-7. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however." Whitley v. Albers, 475 U.S. 312, 319 (1986). Convicted prisoners may be subject to some punishment, just not that which rises to the level of "unnecessary and wanton infliction of pain." Id. (quoting Ingraham v. Wright, 430 U.S. 651, 670

(1977)). When the suffering alleged resulted from a prison official's use force to maintain order, wantonness turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Jordan v. Gardner, 986 F.2d 1521, 1527 (9th Cir. 1993) (*en banc*) (quoting Hudson, 503 U.S. at 7). This distinction recognizes that "whether in the context of a prison-wide disturbance or an individual confrontation between an officer and prisoner, corrections officers often must act immediately and emphatically to defuse a potentially explosive situation" and must quickly "make difficult judgments whether, and how much, force is appropriate." Id.

Construing the facts in the light most favorable to Plaintiff, but without consideration of his declaration, the Court finds that Plaintiff fails to present any evidence establishing that Defendant had a malicious and sadistic intent when he restrained Plaintiff and allegedly broke his thumb. "Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime require inquiry into [the prison official's] state of mind." Wilson v. Seiter, 501 U.S. 294, 300, 302 (1991) (confirming that the Eighth Amendment contains an intent requirement). In his complaint, Plaintiff does not identify any subjective intent or goal harbored by Defendant, instead claiming that Defendant slammed him into the wall and then onto the ground "[w]ithout provocation, reason, or justification." He further alleges only that his thumb was fractured "as a result of the officer's actions;" not because the officer sadistically intended to break his thumb to cause Plaintiff pain.

The facts viewed "in the light depicted by the videotape," Scott, 550 U.S. at 381, also do not demonstrate that Defendant had a malicious and sadistic intent or in any way affirm the version of the facts set forth in Plaintiff's self-serving declaration. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony"). Plaintiff claims in his declaration that following Plaintiff's threat to write up Defendant for harassment and his complaint that Defendant was hurting

him by forcing his arms behind his back, Defendant said he was going to show Plaintiff hurt, and then twisted his left thumb until it went limp.  Though the recordings do not contain sound that would allow the Court to verify what, if any, words were exchanged, it does show that between the time when Defendant pushed Plaintiff to the wall and when he took Plaintiff to the floor, he never appears to have touched Plaintiff's left arm or hand.  Plaintiff's face in profile also is visible for the majority of that time period and he does not flinch or otherwise react during the time frame when Defendant supposedly snapped his thumb, nor does he appear to open his mouth to scream.  Thus, the Court finds that Plaintiff has failed to establish that Defendant used force on Plaintiff with the malicious and sadistic intent to fracture his thumb.  See Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586-587) ("[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'").

Application of the test established in Hudson leads the Court to the same conclusion.  In Hudson, the Supreme Court identified five factors to be considered in evaluating whether Defendant's actions were wanton and unnecessary: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response."  Furnace v. Sullivan, 705 F.3d 1021, 1028-29 (9th Cir. 2013) (quoting Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003)).

Here, Plaintiff's primary injury is the fracturing of his thumb[9], though because Plaintiff refused to cooperate during his deposition, it still is unclear that this injury

---

[9] He does not allege injury from hitting the wall or the floor.  In his complaint, Plaintiff alleges "physical injury, emotion distress, pain and suffering," humiliation, and fear.  ECF No. 1 ¶¶ 31, 34.  However, discovery has closed and the only injury Plaintiff references in his opposition to summary judgment relate to his broken left thumb.  Specifically, he attaches two medical records demonstrating that a screw was inserted into his thumb, resulting in the permanent fusion of the interphalangeal joint of the thumb.

resulted from the incident with Defendant as opposed to an earlier fight in the dayroom. But, viewing the evidence in the light most favorable to Plaintiff and the video, it is conceivable that the thumb injury did occur at some point during the struggle to pull Plaintiff's arms behind his back and then take him to the floor and restrain him. Plaintiff's complaint suggests only that Plaintiff's thumb was fractured "as a result of" the takedown. The video shows no sign of Defendant touching Plaintiff's left thumb or fracturing Plaintiff's thumb or of Plaintiff reacting to it being broken. Either way, Plaintiff acknowledges that he was immediately taken for medical treatment for his thumb. But, because a joint in Plaintiff's thumb remains permanently fused, this factor weighs slightly in Plaintiff's favor.

The need for the force used and the threat reasonably perceived by the officer are factors that go hand in hand. Though Plaintiff alleges there was no reason for Defendant to push him to the wall, the video shows Plaintiff yanking his arm away from Defendant's grip and this comports with Defendant's recitation of events in his report.[10] Prison guards have a responsibility to maintain order and Plaintiff acted in a disruptive manner by shaking off Defendant's grip as Defendant guided Plaintiff down the hall. Defendant states in his report that he pushed Plaintiff to the wall as soon as Plaintiff pulled away in order to gain control of Plaintiff and because he believed otherwise Plaintiff would have punched him or Deputy Vlahakis. ECF No. 19-4. It was reasonable for an officer in those circumstances to believe that when an unrestrained prisoner suddenly yanked away from him, the prisoner represented a threat to the safety of the officers. This is particularly true, given the frequent admonishment that lower courts remain mindful of the fact that corrections officials confronted with a disruption must make decisions as to how to restore discipline "in haste, under pressure, and frequently

---

ECF No. 32 at 17-22. Plaintiff contends this has resulted in lingering numbness, inflexibility, and pain. Id. at 5.

[10] Even if the Court were to consider Plaintiff's declaration, Plaintiff also acknowledges that he pulled away from Defendant. ECF No. 32 at 10 ¶ 10.

without the luxury of a second chance." <u>Hudson</u>, 503 U.S. at 6 (quoting <u>Whitley</u>, 475 U.S. at 320). And, even if Defendant misread Plaintiff's motivation in pulling away from him, "officers are entitled to qualified immunity for 'reasonable, but mistaken, beliefs as to the facts establishing the existence of ... exigent circumstances.'" <u>Furnace</u>, 705 F.3d at 1029-30 (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001)). The Court, therefore, concludes that the officers needed to use some force to regain control of Plaintiff and Defendant's perception of the threat was reasonable.

Looking at the facts alleged in the complaint and viewed in the video recordings, it appears that Defendant used no more force than necessary to restrain Plaintiff. Defendant held Plaintiff against the wall just long enough to pull his hands behind his back and then took him to the floor for handcuffing and leg chaining (with the assistance of Deputy Vlahakis, which from the video appears to have prevented Plaintiff from slamming to the floor). As the Supreme Court repeatedly has made clear, force applied "in a good faith effort to maintain or restore discipline" does not violate the Eighth Amendment. <u>Hudson</u>, 503 U.S. at 7. Furthermore, according to the time clock on one of the recordings, the whole interaction (from the time Plaintiff left his cell to the time he was placed on the floor) lasted about eighteen seconds.

It also does not appear there was much more Defendant could have done to temper the severity of the use of force. Handcuffing was the next logical step for a prisoner who refused to be guided down the hall with no restraint other than Defendant's hand. Whether leg chains also were necessary is unclear, but given that Defendant believed Plaintiff was drunk[11], the use of leg chains was within the contours of reasonable force for qualified immunity purposes.

In sum, the Court finds that, under the <u>Hudson</u> test, Defendant's actions were neither wanton nor unnecessary. Plaintiff, therefore, fails to establish an Eighth

---

[11] Even in his declaration, Plaintiff does not challenge or otherwise contradict Defendant's belief that Plaintiff was intoxicated.

Amendment violation and Defendant is entitled to qualified immunity.  See Whitley, 475 U.S. at 322 ("[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury").

## 2. **Was the right clearly established?**

Even if the Court finds that Plaintiff has presented sufficient evidence to raise a genuine dispute as to whether Defendant violated his Eighth Amendment rights, Plaintiff must show that it was clearly established prior to June 7, 2015, that a corrections officer could not push a prisoner, who was demonstrating resistance to the officer's directions, to the wall and then force him to the floor to ease handcuffing and ankle chaining.  In determining whether a right is clearly established, the court need not find a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate."  White, 137 U.S. at 551 (quoting Mullenix v. Luna, __ U.S. __, 136 S.Ct. 305, 308 (2015)); see also Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017) (confirming the Supreme Court's holding that "clearly established law should not be defined 'at a high level of generality' and that the 'dispositive question' is 'whether the violative nature of *particular* conduct is clearly established'").  "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id.

Neither party offered any analogous Eighth Amendment cases to guide the Court's analysis on this point, but the Court nonetheless will review factually similar cases.  In Whitley, prison guards were attempting to quell a prison riot, where one officer was taken hostage by prisoners.  Whitley, 475 U.S. at 314-15.  Captain Whitley devised a plan to free the hostage, whereby he would climb the stairs towards the cell where the hostage was being held with two officers with shotguns following him.  Id. at 316.  He instructed one of the officers to shoot low at any prisoner who climbed the same stairs, as the prisoner might pose a threat to the hostage or Whitley.  Id.  After Whitley started up the stairs, inmate Albers followed him and was shot in the knee by the officer with the

17

shotgun.  Id.  The Supreme Court concluded that, because an officer was held hostage and armed prisoners still were roaming the area, the situation remained dangerous and volatile and, thus, the order to shoot low did not constitute a command to inflict wanton and unnecessary pain.  Id. at 323-24.  Consequently, the Court concluded that Captain Whitley was entitled to qualified immunity on Albers's Eighth Amendment claim.  Id. at 324-25.  The situation in the instant case was less fraught, but the facts of Whitley would support Defendant's understanding that he could restrain, take to the floor, and then cuff a volatile Plaintiff.

In Watts v. McKinney, 394 F.3d 710, 711 (9th Cir. 2005), the plaintiff alleged that when he did not answer an interrogating prison officer's questions the way the officer hoped and repeatedly asked for a lawyer, the officer slammed the inmate's face into a wall and then kicked him in the penis and back while the inmate was lying handcuffed on the floor.  The court found the officer was not entitled to qualified immunity because "the vengeful acts of a frustrated investigator" violated the clearly established Eighth Amendment right to be free from the use of force for the malicious and sadistic purpose of causing harm.  Id.

Watts differs from the instant case in that the officer was not trying to restrain a disobedient prisoner but, instead, was alleged to have beaten a prisoner who already was restrained and not posing a threat.  Thus, it does not support a finding that Defendant here violated a clearly established right and "that every 'reasonable official would have understood that what he is doing violates that right.'"  Ashcroft, 563 U.S. at 741(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Finally, Defendant referred the Court to a case involving similar facts, but analyzed under the Fourth Amendment's "objective reasonableness" standard.  In Shafer v. County of Santa Barbara, 868 F.3d 1110, 1112 (9th Cir. 2017), a sheriff's deputy ordered a college student to drop water balloons and the student refused.  Though the facts are disputed, the court generally concluded that the officer grabbed the student's arm, then conducted a leg sweep, took the student to the ground, and handcuffed him.  Id.

at 1113-14.  In conducting the second prong of the qualified immunity analysis, the court concluded that "the question at hand is whether an officer violates clearly established law when he progressively increases his use of force from verbal commands, to an arm grab, and then a leg sweep maneuver, when a misdemeanant refuses to comply with the officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment.  The answer is no." <u>Id.</u> at 1117.  Having followed a similar sequence of escalating force, a reasonable officer in Defendant's position would have understood that his conduct was lawful even under the higher standard applied to individuals who have not been convicted of a crime.

In sum, the Court concludes that it was not clearly established prior to June 7, 2015, that a corrections officer could not push a prisoner, who was demonstrating resistance to the officer's directions, to the wall and then force him to the floor to ease handcuffing and ankle chaining.  The cases cited above, which appear the most factually similar to the case at hand, certainly do not "place[] the statutory or constitutional question beyond debate." <u>White</u>, 137 U.S. at 551.  Accordingly, the Court finds that Defendant is entitled to qualified immunity as to Plaintiff's Eighth Amendment excessive force claim.

### 3. <u>Conclusion Regarding Qualified Immunity</u>

For the foregoing reasons, the Court finds that Defendant did not violate Plaintiff's Eight Amendment right to be free from excessive force and that, even if he did, the right Plaintiff alleges was not clearly established. <u>Ashcroft</u>, 563 U.S. at 741.  The Court, therefore, **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

///

///

///

///

## b. **Plaintiff's California State Law Claims**[12]

Plaintiff's complaint also alleges violations of various California state laws. Specifically, Claim 4 is for intentional infliction of emotional distress pursuant to California Government Code §§ 905 and 945 *et seq.*, Claim 6[13] is for battery pursuant to California Government Code §§ 905 and 945 *et seq*, Claim 8 is for negligence pursuant to California Government Code §§ 905 and 945 *et seq.*, and Claim 10 is for violation of California Civil Code §§ 43 and 52.1. These claims are directed to Defendant[14], the San Diego Sheriff's Department (which has been dismissed), and various Doe defendants[15].

The claims against Defendant are premised on the same conduct discussed above, which the Court found constitutionally permissible. The state law claims otherwise involve claims against defendants that either have been dismissed or who have not been named or served. Because these individuals are not part of the suit and because the Court recommends dismissal of Plaintiff's sole federal claim against Defendant, the Court **RECOMMENDS** that the district judge **DECLINE** to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) as to the state law claims.[16]

///

///

---

[12] Plaintiff's second and third causes of action for failure to properly train, supervise, and discipline do not apply to Defendant Brady and will be discussed below in reference to the Doe defendants.

[13] Plaintiff skipped Claims 5, 7, and 9 in his complaint.

[14] Who frequently is referred to as "Brody" instead of "Brady."

[15] The Doe defendants will be discussed below.

[16] The Court also notes that, because Plaintiff alleges tort claims, Plaintiff was required to comply with the California Tort Claims Act ("CTCA") procedure. This entails filing a claim before the appropriate board before a "suit for money or damages may be brought against a public entity." Cal. Gov't Code § 945.4. In federal cases, supplemental state law claims are subject to this claims filing requirement and the law governing such claims. Karim-Panahi v. LAPD, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff alleges in his complaint that he filed a claim against the County of San Diego on November 30, 2015, and that said claim was rejected on January 14, 2016. ECF No. 1 ¶ 4. However, Plaintiff did not attach the claim or provide any verification that all of his tort claims were presented to the appropriate board. Though Defendant did not challenge Plaintiff's state law claims on this grounds, Plaintiff's complaint is not signed under penalty of perjury, so the Court cannot confirm that this requirement was satisfied. This provides an additional reasons for the district judge to decline to exercise supplemental jurisdiction.

### c. Claims Against Doe Defendants

Plaintiff named seven Doe defendants in his complaint—all employees of the San Diego County Sheriff's Office—and directed most of his claims against some or all of them. Specifically:

1. His first cause of action for excessive force is directed at "All Defendants" and specifically calls out actions by Doe 1.

2. His second cause of action for failure to properly train is directed at "All Defendants" and specifically calls out actions by Doe 1.

3. His third cause of action for failure to properly supervise and discipline is directed at Doe 2.

4. His fourth cause of action for intentional infliction of emotional distress is directed at Does 1-7.

5. His sixth cause of action for battery is directed at Does 1-7, although he does not make clear the basis for the Does' liability.

6. His eighth cause of action for negligence references a supervisor Doe defendant who is alleged to have failed to properly train and supervise the deputies.

In his initial screening order, the district judge explained that while the use of Doe defendants generally is disfavored, Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), he would not dismiss Does 1-7 because Plaintiff had not yet had an opportunity to conduct discovery and identify these individuals. ECF No. 3 at 7 n.2; see Gillespie, 629 F.2d at 642 (finding that "the plaintiff should be given an opportunity through discovery to identify the unknown defendants"). However, the district judge warned Plaintiff that he must amend his complaint to identify those individuals and serve them within 90 days of the commencement of the action. Id.

Fact discovery now has closed in this case and the deadline for amending the pleadings was December 19, 2016. See ECF No. 14. Plaintiff has not identified the Doe defendants or attempted to amend his complaint and serve them. At this late stage, Plaintiff has not offered arguments or evidence indicating liability on the part of these

individuals based on the facts alleged in his complaint. Rule 4 of the Federal Rules of Civil Procedure provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Before doing so, the Court must give notice to the Plaintiff and allow an opportunity to respond, <u>Crowley v. Bannister</u>, 734 F.3d 967, 975 (9th Cir. 2013), which the Court is providing now by way of this Report and Recommendation. As there is no provision in the Federal Rules of Civil Procedure permitting the use of fictitious defendants, the Court, *sua sponte*, **RECOMMENDS** that the district judge **DISMISS** all claims against the remaining Doe Defendants without prejudice. <u>See</u> <u>Walker v. Sumner</u>, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a *pro se* plaintiff fails to provide the Marshal with sufficient information to effect service, the court's *sua sponte* dismissal of those unserved defendants is appropriate under FED. R. CIV. P. 4(m)), <u>overruled on other grounds by</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 483–84 (1995); <u>Urias v. Quiroz</u>, 895 F. Supp. 262, 264 (S.D. Cal. 1995) (Huff) (*sua sponte* dismissing Doe defendants after granting summary judgment in favor of the named defendants).

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court **RECOMMENDS** that the district judge: (1) **STRIKE** Plaintiff's declaration in support of his opposition to Defendant's motion for summary judgment, (2) **GRANT** Defendant's summary judgment motion, (3) **DISMISS** all claims against the Doe defendants, (4) **DECLINE** to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) as to the state law claims, and (5) close this case.

This Report and Recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties by **<u>January 5, 2018</u>**. The document should be captioned "Objections to Report and Recommendation."

Any response to the objections shall be filed and served by **<u>January 19, 2018</u>**.  The parties are advised that any failure to file objections within the specified time may waive the right to challenge the magistrate judge's factual findings on appeal of the Court's order.  <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  December 8, 2017

Hon. Nita L. Stormes
United States Magistrate Judge